UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
AUG 3 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-589-GWU

MARY LYNN GRIFFITH,            PLAINTIFF,

VS.            **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Griffith

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Griffith

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Griffith

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Griffith suffered from a history of hip injuries with post traumatic arthritis, a history of asthma, noninsulin dependent diabetes mellitus, hypertension controlled with medication, obesity, a history of a fracture of the left great toe, a recurrent major depressive disorder and an anxiety disorder. (Tr. 20-21, 23). While these conditions restricted the plaintiff to less than a full range of light level work, she still believed Griffith would be able to return to her past relevant work as a customer service representative as well as several other jobs to which her skills would transfer. (Tr. 22, 23).

Prior to the onset date, she had a history of bilateral posterior wall acetabulum fractures; her left side had been treated without reconstruction of the posterior wall due to the small size of its fragments. (Tr. 133). She thereafter dislocated the hips several times between 1996 and mid-1998. (<u>Id</u>.). When seen by an Assistant Professor of Orthopedic Surgery at the University of Kentucky in October of 1998, after another dislocation, a CT scan had revealed that the posterior wall was only 65 percent intact; this, the specialist said, placed her in a "grey area" with her hips possibly still unstable. (<u>Id</u>.). Because of the imperfect surgical options, he advised her at that time to avoid positions of hip flexion, adduction and rotation and indicated they could proceed with surgery if she continued to dislocate her hips. (Tr. 134).

7

Griffith

As of January, 1999, the specialist indicated that "she could work in a job where she stood or walked for no more than four hours each day." (Tr. 131).

In 2001, the plaintiff saw Charles Stargel and his staff on several occasions, none of which focused on her musculoskeletal condition. (Tr. 165-166). Right knee complaints surfaced in November, 2002; swelling was not obvious, possibly due to the plaintiff's body size, but there was some tenderness noted on one occasion. (Tr. 162). Right hip pain only became the focus of complaints to Stargel starting in January, 2003. (Tr. 161). Later that month, Griffith had been "walking more than usual" and her pain increased; x-rays did not show acute changes. (Tr. 160). In June, 2003 she complained of right elbow pain; x-rays were negative and, by the eleventh of the month, there was a full range of motion as well as strength and sensation, albeit some tenderness. (Tr. 158).

Dr. Charles Catron, later in the month, also described a full range of motion but with tenderness; he did not think that a fracture was apparent on x-rays and felt that she should restrict her activities as pain would allow and return for a further office visit if she did not improve as expected over the next three weeks. (Tr. 137).

No further office visits to Catron or to Stargel's office were documented until late October, 2003, at which time the patient called Stargel's office, indicating that she needed to reschedule an appointment as she "cannot get off work." (Tr. 157).

Stargel saw Griffith at the end of October and she complained of ongoing elbow pain; no real clinical findings were made. (Tr. 156). No other musculoskeletal

8

complaints were voiced until early 2004, although the plaintiff saw the doctor for other reasons and it was incidentally noted (as part of an investigation into urinary complaints) that she had no lumbar tenderness. (Tr. 155).[1]

In March, 2004, the plaintiff apparently saw both Stargel and Catron. The plaintiff complained of chronic hip pain and was noted to have gained weight. (Tr. 152). Old laboratory results from 2001 were recited; RA and ANA results had been borderline, but C-reactive protein and the Sed rate had been negative. (Id.). Stargel referred to the plaintiff's "limitations" in exercising without providing details. (Id.). That same month Catron opined that there were no restrictions stemming from the right elbow sprain. (Tr. 136).

In April, 2004 the consultative physical examiner detected no obvious abnormalities except with regard to the musculoskeletal system. (Tr. 175-176). The plaintiff had recently fractured her toe and was wearing a walking boot (Tr. 176), but this would be expected to resolve in eight weeks. (Tr. 177). The hips had signs of previous surgeries and had a decreased range of motion in all directions. (Id.). He opined that the plaintiff would have "considerable difficulty with heavy lifting and labor and with stooping, bending, squatting, and crawling on the basis of hip injuries and post traumatic arthritis and propensity for hip dislocation." (Tr. 177). Prolonged standing and walking would be affected. (Id.).

---

[1] The plaintiff was treated several times for asthma, but did not stop smoking until February, 2004 (Tr. 153), at the very earliest (Tr. 152, 290, 291, 293).

9

Griffith

Medical Reviewer Gary Higgason completed an assessment form restricting the plaintiff to light lifting, with limited pushing/pulling and restrictions on climbing, kneeling, crouching and crawling as well as exposure to fumes, odors, dusts, gases and poor ventilation (Tr. 233-240).

After this point, subsequent records of office visits to Charles Stargel were introduced. The right great toe fracture, as well as complaints of left knee pain, were variously noted through December, 2004. (Tr. 286-296). Crepitus in the knee, but no evidence of joint instability or effusion, was noted in June (Tr. 294) and in December (Tr. 286). Hip discomfort was only focused upon in a March, 2005 office visit, after she had been "trying to do some walking to lose some weight." (Tr. 283).

As far as the ALJ's assessment of the plaintiff's physical status is concerned, it was adequate, chiefly because of the plaintiff's description of her past work. Griffith stated that the job involved no walking, standing, climbing, stooping, kneeling, crouching, crawling, lifting or carrying. (Tr. 84). The plaintiff stated that she could not sit for prolonged periods and that was part of the reason she could not work (Tr. 336), but no doctor clearly proscribed that activity. There was no indication of record that the position would involve a significant amount of exposure to pulmonary irritants, even assuming the medical reviewer's restrictions would be binding.

As far as the plaintiff's mental status assessment was concerned, Treating Physician Stargel made only very intermittent references to emotion problems, even counting references to transient social stress. He diagnosed "social stress, mood

10

Griffith

disorder" in August, 2001 (Tr. 166), but did not mention a similar problem until April, 2003 (Tr. 159). The next reference was a "history of depression/anxiety" noted in June, 2004. (Tr. 296). No emotional problems were mentioned through March, 2005.

Gary Maryman conducted a consultative examination in April, 2004. Diagnosing a dysthymic disorder and citing a GAF of 58,[2] Maryman's only restrictions were regarding dealing with the public and a need to avoid fast-paced and high pressure work environments. (Tr. 184).

The plaintiff sought assistance from the Cumberland River Comprehensive Care Center. However, she was described as neat, friendly, cooperative, alert, focused, oriented and with an intact memory on a number of occasions. (Tr. 244, 248, 251, 255, 258, 260, 262, 266, 268, 270, 278). A major depressive disorder and a moderate anxiety disorder were diagnosed by the psychiatrist, who cited a GAF of 55. (TR. 265). Earlier, a GAF of 60 had been noted. (TR. 272). No specific functional restrictions were mentioned.

While it would have been better for the ALJ to have listed the mental restrictions by the non-examiners, or cited the precise statements of Gary Maryman, this is not reversible error under the facts of this case. The plaintiff had earlier

---

[2]Scores between 51 and 60 are consistent with "moderate . . . difficulty in social, occupational or school functioning" . . . as per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.) (DSM-IV), p. 34.

11

Griffith

described her past job as involving no supervision of others, or the use of machines, tools and equipment. (Tr. 84). She described the job as a "very stressful environment" due to the particular callers the center she worked for received (Tr. 331), yet the vocational expert stated that "a limited but satisfactory" ability to deal with work stresses would not prevent her from returning to work. (Tr. 347). Given the plaintiff's burden of proving she could not return to the past relevant work, as performed in the economy, it was incumbent upon the plaintiff to produce greater evidence on this point. As it was, substantial evidence supports the Commissioner.

The decision will be affirmed.

This the ___31___ day of August, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE

12